**UNITED STATES of America ex rel. William STEWART, Petitioner-Appellant,**

v.

**Frank J. PATE, Warden, Respondent-Appellee.**

**No. 18634.**

United States Court of Appeals, Seventh Circuit.

May 13, 1971.

Charlotte Ziporyn, Samuel D. Freifeld, Chicago, Ill., for appellant.

William J. Scott, Atty. Gen., Joel M. Flaum, First Asst. Atty. Gen., Jayne A. Carr, Warren K. Smoot, Morton E. Friedman, Asst. Attys. Gen., Chicago, Ill., for appellee.

Before KILEY, PELL and STEVENS, Circuit Judges.

KILEY, Circuit Judge.

Petitioner Stewart appeals from a district court judgment denying him habeas corpus relief after an evidentiary hearing. We affirm.

In April, 1948, while serving sentences imposed in 1942—one for life for armed robbery, and one for one year to life for burglary—Stewart was indicted for and pled guilty to murder of a fellow inmate in Menard Penitentiary. He was given a 99 year sentence. In 1968 he was paroled from the 1942 sentences, and the Illinois Pardon and Parole Board then informed him that he was to commence the 1948 sentence of 99 years. In March of 1969 the Governor of Illinois commuted the 1948 sentence to 25 years. Stewart's main contention is that the common law record must, and does not, show that he was advised at the 1948 hearing that his sentence was required by Illinois law[1] to be consecutive be-

cause the alleged murder was committed in Menard Penitentiary and that his plea in ignorance of the mandatory sentence was not knowingly and intelligently made; and that it does not follow from the fact that the statute's mandate that such sentences be consecutive is read into the sentence, United States ex rel. Wells v. Pate, 310 F.2d 460 (7th Cir. 1962), that he was so advised.[2]

The district court's written opinion denying the claim is based upon its examination of the common law record of the 1948 hearing and upon extensive oral and documentary evidence taken at the habeas hearing.[3]

The common law record discloses that "on this 5th day of April comes the defendant William Stewart in person and by his counsel Walter J. Schuwerk and the People of the State of Illinois by David M. Conn, State's Attorney, and the Defendant together with his attorney asked leave to withdraw his plea of not guilty heretofore entered * * *" and "* * * before accepting such plea the Court fully advises the Defendant of his legal and constitutional rights and of the consequences of such plea of guilty * * * [and] of the sentence that could be imposed on such plea of guilty, yet the Defendant being so fully advised persists in such plea of guilty." And "the Court hearing evidence of wit-

1. Illinois Penitentiaries Act, Ill.Rev.Stat. ch. 108, § 118:

When any crime is committed within any division or part of the penitentiary system by any person confined therein, cognizance thereof shall be taken by any court of the county wherein such division or part is situated having jurisdiction over the particular class of offenses to which such crime belongs. Such court shall try and punish the person charged with such crime in the same manner and subject to the same rules and limitations as are now established by law in relation to other persons charged with crime in such county. But in case of conviction, the sentence of said convict shall not commence to run until the expiration of the sentence under which he is then held in confinement in the penitentiary system. * * *

2. We agree with Stewart that reading the statutory mandate into the sentence would not show ipso facto that he was advised by the state court of the mandate.

3. The district court applied the rule in United States ex rel. Sterling v. Pate, 403 F.2d 425 (7th Cir. 1968), cert. den. 396 U.S. 911, 90 S.Ct. 225, 24 L.Ed.2d 186 (1969), that the common law record imports verity and cannot be attacked collaterally. However, presumably not satisfied that the record itself fairly determined the question, the district court also took evidence and said that "In any event, petitioner has presented no evidence other than his own testimony that he was not properly admonished." The *Sterling* decision would preclude impeaching the verity of the 1948 record if it disclosed that Stewart was advised of the mandatory consecutive sentence.

nesses duly sworn and examined and the recommendations of the State's Attorney hereby sentences the Defendant to the Illinois State Penitentiary for a term of 99 years and there to remain until discharge[d] according to law." The record further states that April 5, 1948, "Defendant, together with his attorney present in open court, entered a plea of guilty to the crime of murder and was sentenced by the court to 99 years in the Illinois State Penitentiary," and that Walter J. Schuwerk had been previously appointed to represent Stewart.

Attorney Walter Schuwerk testified at the hearing, subject of the proceeding before us, that he had only a vague memory of representing Stewart, but that he did at the time represent "indigents." However, there is in the record an affidavit supporting his request for fees for representing Stewart which states that he had spent five days in preparation of the hearing and had interviewed Stewart in the penitentiary; and there is the order of State Trial Judge Maxwell finding that the services were rendered and allowing the fee. After referring to the affidavit with respect to his fees, Schuwerk testified that he would not have signed it if it did not speak the truth. And both Conn and Judge Maxwell in their official statement of the case—part of the common law record—stated that "Walter J. Schuwerk, a very capable attorney in Randolph County," was appointed to defend Stewart.

Schuwerk also testified that he was familiar in 1948 with the mandatory consecutive provision in the Illinois Penitentiaries Act at the time of the hearing. He testified, without objection, that he had discussed that section with State's Attorney David M. Conn of Randolph County, Illinois, in 1948.

Conn testified from memory, refreshed by his file in the Stewart case,[4] that during his terms as state's attorney he prosecuted numerous persons for crimes committed in the penitentiary and was familiar with the pertinent section of the Penitentiaries Act, that his file of the case showed that Walter Schuwerk had told him that Stewart would plead guilty, that in 1942—because of "countless" habeas corpus petitions being filed following an Illinois Supreme Court decision—he prepared guidelines for procedures with respect to admonishing prisoners upon their pleas, and that the guidelines were furnished to the courts in Randolph County and Judge Maxwell used the guidelines in every case. He also testified that his file reflects that on March 29 he advised attorney Schuwerk that he would recommend a consecutive 99 year sentence, and that Judge Maxwell advised Stewart of the consecutive nature of the mandatory sentence because that requirement was in the guidelines.

Stewart testified at the habeas corpus hearing, and the district court was justified in finding the testimony unpersuasive. His testimony in part was contradicted by the testimony of his sister who testified at the hearing, and by statements of his own made in various communications.

■ We conclude, on the basis of this evidence, that—even if the statement in the common law record that defendant was admonished of the consequences of a guilty plea, including the sentence that could be imposed, was insufficient to show that he was admonished as to the consecutive nature of the sentence—the district court did not err in finding that defendant was in fact admonished. The court was entitled to discredit the testimony of Stewart in light of the contradictory statements made by him. And the evidence of State's Attorney Conn that the judge used guidelines containing an instruction on the mandatory nature of such sentences and the state court record evidence that Stewart was

---

4. He located the file in 1967 after receiving a letter from Stewart's attorney, and recalled much of the 1948 hearing after seeing Schuwerk's affidavit in the public record of the case.

represented by able counsel when he pled guilty justifies the inference that he was in fact admonished as to the consecutive nature of the sentence.[5]

It is true that there was considerable confusion among Illinois officials with respect to whether the murder sentence was to be concurrent or consecutive. In March of 1953 Warden Ragen wrote the Parole Board, apparently in response to an inquiry as to the nature of the 1948 sentence. He referred the Parole Board to the statutory mandatory consecutive sentence. The Illinois Attorney General's original opinion was that since there was no express consecutive provision, ipso facto the sentence was concurrent. Later, in view of this court's decision in United States ex rel. Wells v. Pate, *supra*, the Attorney General reversed his position. However, what mistakes or misapprehensions there were did not compel the district court in this habeas corpus proceeding to find as a fact that Judge Maxwell on April 5, 1948 did not advise Stewart that one consequence of his plea of guilty of the murder of the penitentiary inmate was that the sentence of 99 years had to be consecutive to the sentences then being served by Stewart.

■■ The district court also decided that there was no merit in Stewart's claim that he was denied compulsory process for inmate witnesses in his behalf by transfer of inmates from Menard Penitentiary to another institution, and that the hostile atmosphere of the court room coerced his guilty plea. As to the first, the court found that the transfer took place about a month before the entry of the plea under an order issued prior to the murder for which Stewart was indicted. As to the second, there was a conflict in the habeas testimony with respect to several of the al-

leged coercive factors, and the court was justified in finding that the plea was not coerced. We see no reason to disagree with the court with respect to these two claims.

For the reasons given, the judgment is affirmed.

---

5. We find no merit in Stewart's contention that the district court's finding that Walter J. Schuwerk represented Stewart was clearly erroneous. The judge's docket sheet and the penitentiary mittimus, although not initialed by the judge, recite that Walter J. Schuwerk represented Stewart. The affidavit of Schuwerk for attorney's fees makes the same representation. Stewart's sister testified that Stewart was represented by a lawyer, and Stewart himself wrote a letter to Walter Schuwerk thanking him for his representation on the murder charge.